All right, we'll start with Harford. U.S. v. Harford. Good morning, Your Honors. May it please the Court, my name is Bill Russo, and I represent one of the appellants here, David Harford, who is a young man who has been designated as a career offender. At issue in Mr. Harford's career offender designation are two crimes, two Pennsylvania convictions, resisting arrest, and simple assault. When I first made my Does he have the, is he the one who has the third one? One of them has, oh, an attempted burglary. Yes, he has an attempted burglary, which I'm not arguing, Your Honor. Because the Supreme Court has said attempted burglary is a crime of violence. Yes. Whether it is or not, the Supreme Court has said so, that makes it so. And we understand that sometimes an attempted burglary gone bad is more prone to cause violence than a burglary itself. That's what the Supreme Court opinion says, yeah. Okay, thanks, Mr. Russo. Your Honor, or Your Honors, I should say, if the government's position is correct on the violence involved in a resisting arrest, my friends who sat in at the lunch counters in the 60s, very possibly career offenders. Some of them have two and three arrests for resisting arrest. Mr. Russo, yeah, that worries us. And I went through the Pennsylvania cases very carefully. Do you know of any case in which a lie-down protester, whether it be lunch counter, abortion, nuclears, or anything, has been charged with resisting arrest? Any opinion in Pennsylvania that says that is resisting arrest? If they just lie there, the cops come, pick them up, and put them into the paddy wagon. I don't, Your Honor. And I assure you, I looked far and wide for one of those cases because I would have been starting off with that argument. But I didn't find that. But there are cases in Pennsylvania, one I cited in my brief, Thompson, where there was passive resistance. Well, there was more than passive resistance in Thompson. First of all, didn't she hit the horse or something? Yes, she did. Okay. But that's assaulting the horse. Well, that may have been. So that's a little different than the lie-down protesters. There's another case in Pennsylvania, Geigy, I believe the name of it is, where the person just remained stiff, wasn't a protester or anything, Your Honor, and the officer at the end of the case says, I was exhausted. I was exhausted by trying to either pull her hands or take the defendant into suspect. Take Thompson, for example. It certainly required some force to move, get them out of those handcuffs that they had put themselves into together. They're not quite the same as the lie-down protesters. Well, I know that we're talking about, and I certainly go back to the 60s, Your Honor. So do I. Look at my hair. I know the clergy in those days would chain themselves to the fences of the Army bases or military bases. And it's very similar. The passive resistance, even in the cuffs, my position is that person didn't intentionally create a substantial risk. I think recklessness, especially if we look at the statute, recklessness would certainly suffice. Well, recklessness, the government has now conceded. I understand that. And that applies, they were very careful, that applies across the circuit. I know, I was just joking with my opponent. But that's the simple assault rather than the resisting arrest issue, isn't it? In other words, we have two statutes at issue. Right. And we played with resisting arrest and sentencing and then withdrew that, and the panel is going to, well, that will come out. But what are you talking about? Are you talking about simple assault or are you talking about resisting arrest? Well, for the moment, I'm talking about the resisting arrest. I think if we look at Begay, Begay, I believe, stands for the proposition that the man's wraith has to be a causation for the violence. Purposeful, violent, or aggressive conduct is what Begay says. And my position is here, especially if you look at Mr. Harford's conduct in his resisting arrest, it says he fled. Actually, he walked away. That's passive. Do you think it's appropriate to look at the actual conduct, whether it's passive or aggressive or has the potential for serious physical harm? Or should we just look at the statute itself? I think that would be a last resort, Your Honor. I think we have to look at the statute first. And you have to look at, in Pennsylvania, what the statute is. If it's ambiguous, which some of the statutes are, especially the simple, we're talking about resisting here. You're talking about a resisting arrest. Well, the thing is that there is, of course, benign resisting arrest chaining to offense, and there's very aggressive physical resisting arrest. That's correct. And if you look at the conduct, you still don't have to have, you still don't have, in almost any case, the intentional man's wraith to cause violence. Well, I mean, I'm having problems between which of the two. The resisting arrest statute in Pennsylvania doesn't have any oars in it. The simple assault does, so you'd have to use a modified categorical analysis. And that's where the restlessness issue comes in on the simple assault. But if you're limiting yourself right now to the resisting arrest, is that a categorical or a modified categorical analysis? Well, I think under either analysis, it's... Well, wait a minute. What is the statute? Let's first go to whether the statute has any oars in it. The statute says creates a risk of substantial harm. Well, but it's a singular statute, isn't it? Yes, it is, Your Honor. Okay. So then we use only the categorical approach under Shepard and Taylor. The statute says a person is guilty of resisting arrest if, with the intent of preventing public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant. So once you're guilty to that, you are admitting purposeful conduct creating a risk of serious harm. I don't think you're admitting purposeful conduct, Your Honor. I think you're admitting that you did, that the person creates a substantial risk.  There is a mens rea requirement in there, isn't there?  Reckless. No. I know. No, not in the... You read something else. Yeah. Not in the... How can you recklessly resist arrest? I mean, you can... You can lie down on the railroad tracks, Your Honor. That's resisting the arrest, but it's not intentionally causing the violence. You may be causing violence to yourself, even. Well, certainly, just the charge itself, you take into account a potential for very serious harm to a defendant or accused himself or herself and to the police officer and to anyone else in the area where the police is trying to subdue somebody. There would be a potential, Your Honor, but no... Well, is the potential a word in the statute? Certainly no more than possessing a shank in prison. But it's the potential for serious harm that is being targeted here and what's made unlawful. I don't think the potential for harm is comparable to that in an arson or that in extortion or even that in a burglary. You're equating potential for serious harm and resisting arrest with the potential for harm in arson? I said they're not comparable. They're not comparable, Your Honor. Certainly, I'm not saying that. I said the potential for harm is not comparable. Your Honor, I think there's potential for harm anywhere. A DUI certainly creates a potential for harm. Well, the Supreme Court has decided that the other way. I know that, and that's why I'm saying it. As a practical matter, Your Honor, if I'm drinking and driving, if you take it to its logical conclusion, somewhere out there, there's a potential for harm. But I certainly didn't... Let's put it on someone else. The driver doesn't get in that car and say to himself or herself, I'm going to run somebody over. Can you compare resisting arrest with simple assault in terms of the potential for serious harm? Excuse me, Your Honor? Is there any comparison? I mean, resisting arrest, can that be compared with simple assault in terms of the potential for serious harm? See, I would think you're challenging the assault, the simple assault as well. Of course. I need them both, Your Honor. It just seems to me, maybe it's intuitive on my part, but it seems to me that you have a better argument with regard to the simple assault. But in your case, you have to prevail on both. Yes, I do. Or Mr. Harford's going to stay in jail for another three years. Why do you have to prevail? Don't you? Oh. Yes, both. If this Court holds in a precedential opinion that resisting arrest is a crime of violence, you're out. You're out. You lose, right? I'm out. My client's in, Your Honor. As I gather from the amicus briefs that we got on behalf of federal defenders, so are a lot of other people. Yes, Your Honor. But that's, you know, isn't there something, and I remember reading this, in the history of the Pennsylvania statute in which they made clear, in which the Pennsylvania legislature made clear that it was not to cover this sort of minimal kind, I guess it's the resisting arrest, kind of minimal conduct that sometimes happens. Is that right? Am I wrong? We'll hear from the government on that. Or the state, really. No, government. Thank you, Your Honor. No, no. That's a question. Oh, I'm sorry. I thought you were here from the government. Isn't there something in the legislative history that shows that Pennsylvania did not intend to cover in these statutes some minimal action that takes place? I'm not familiar with the legislative history, Your Honor, but I could tell you as a practical matter, simple assaults are pled to every day in the common police courts because the guidelines are favorable to a defendant. The usual sentence for, especially a first-time simple assault, is six months to a year probation. Usually they're not accompanied by a full colloquy with a statement of facts. And to go back and take an approach where you're looking at the charging documents for simple assaults. Well, that's what we have to do, according to the Supreme Court. Your Honor, that… And Shepard and Taylor. In the case of simple assault in the common police courts of Pennsylvania, that's going to be a very, very difficult task. But your job is easier in a way in simple assault because of the government's concession that recklessness doesn't constitute a crime of violence. So, but of course what you'd have to do then is send it back, and you're telling us that it will be hard to do. But that shouldn't hurt your clients. It's the government's burden. No, that's correct. So if the government can't prove those documents show the mens rea that's necessary, then your people are off. But you have more trouble with, as Judge Fuentes suggested. I agree. I'm not worried about the simple. I'm worried about both of them. But I think it's the resisting arrest, which is an issue we handled in Stinson. I agree with you. And we went through that opinion and had an argument on it. I agree. I have a tougher job there. Mr. Krauss, I don't remember if he argued it or not. Okay. Do you have more questions? Yeah, the jurisdictional issue. You're proceeding on the 3582 motion, which concerns a guideline that has been lowered. But the amendment has to have the effect of lowering the ultimate sentence in order for you to proceed on the 3582. And I don't think that occurs in this case. So it being a jurisdictional issue, are we not or was not the district court without jurisdiction? Your Honor, if you were to remand, let's say. You understand the point that I'm making? Yes. Let's say you were to. You're saying that it wouldn't lower my client's sentence. Well, it has to have that effect as a matter of jurisdiction. In other words, for you to get in the door. If we'd have to do another analysis on it, I believe it would lower his sentence. I thought that was O'Neill Sloan. Is this an amendment 706? Are you arguing for a change in that in this case, Hartford? I'm arguing that if he's not a career offender, his guideline is way below. This isn't a crack. This isn't amendment 706. Did your client proceed under 3582 to get a lower sentence on the drug offense? Maybe that's Sloan. He doesn't have a mandatory. The mandatory would not apply, Your Honor. That's Mr. That's O'Neill Sloan. Yeah, that's O'Neill Sloan. I'll take it back. You're not trying quorum nobis in your case. We have a quorum nobis issue in the next case. The problem in your case is I see it so far as resisting arrest. The mandatory would not apply. He's for other reasons. All right. Thank you, Your Honor. Have you decided between the two of you who would do rebuttal? Yes. I should have told you my colleague would be doing rebuttal, Your Honor. Thank you. Thank you for your courtesy, Your Honors. Well, thank you for coming. Police Court. My name is Ronald Krause. I'm an assistant federal public defender for the Middle District of Pennsylvania, and I represent the appellant James O'Neill Sloan. And you people were very happy to get the government's letter. Yes, we were. And I would also like to reserve three minutes for rebuttal, if that's acceptable. Sure. Yes. Your Honor, in light of the government's concession on the simple assault and the recklessness issue, I don't think it merits much further discussion. Mr. Bloom and I, I think, are both in agreement that if O'Neill Sloan can go ahead with his case, then it probably should be remanded for further filling out of the record. Is it your burden to show the Taylor issue, Shepard, or is that the government's burden? That's a good question, Your Honor. Because Mr. Russo's right. Pennsylvania records in these minor criminal cases are practically nonexistent, and it will be a problem. Well, I would think it's the government that wants it. Yeah, well, I want him to say it. I want the government to concede it. I would assert that it's the government's burden. I thought you would. Before we get to the merits, could you address Judge Fuente's concern? Because I'm very interested in how you get in the courthouse door because under 706, certainly you're entitled to a two-point reduction. I think that takes you from 34 to 32, if I remember correctly. If he's not a career offender, his total offense level would be 34, criminal history 6, and the final calculated guidelines range would be 262 to 327. And so that the bottom of that range, which is where he was sentenced here as a career offender, is a difference of 98 months. But Amendment 706 says you get a new shot at it, you get a fresh sentencing hearing, if the guidelines would change. But as I understand it, your client was sentenced as a career offender. So how do you get over that hurdle? Well, I think there are two arguments for that, Your Honor. And first, just to clear the deck on the quorum novus, I'm not pursuing that any further. You're not? No. Okay. It really doesn't apply here. So I will abandon that issue. And the habeas, this would be his second. You're abandoning that also, aren't you? No. I'd like to come back to that, though, if I may, Your Honor. Sure, yeah. I think we are concerned about jurisdiction. Yes, I'm going to deal with jurisdiction, but I think there are two ways that this Court can look at the jurisdiction. One has to do with the scope of the 3582 proceeding, and one has to do with the Dorsonville 2241 path toward jurisdiction. Now, in terms of the scope, it's certainly clear that this Court takes the view that a 3582 C sentence reduction proceeding is very narrow. It's not a full de novo resentencing. It's not a Booker resentencing. It's not a resentencing where the district court gets to revisit issues that could have been brought up on direct appeal, like an insufficient downward variance or departure or things like that. The Court has made it very clear that the 3582 proceeding is for defendants whose applicable guidelines sentencing range is actually lowered. Now, the key word in that analysis is applicable guideline range and how that applies in the very unique circumstances of this case. Now, when Mr. O'Neill Sloan was originally sentenced, as Your Honor pointed out, his applicable guideline range was the career offender guidelines. And this Court has held in the Mateo case and in cases that followed that because Amendment 706 doesn't have the actual effect of lowering those career offender guideline ranges, then the defendant is not eligible for the 3582 reduction. But now, Mr. O'Neill is appearing in court, and he seeks the Amendment 706 reduction in a new environment where Begay has instructed that O'Neill Sloan is not a career offender. But Begay was decided before we decided Mateo, was it not? Yes, it was. So how do you get around Mateo? Why doesn't Mateo control? I guess what I'm suggesting is Begay can't help you argue that Mateo does not control because Mateo came after Begay. Well, but Mateo didn't address this particular circumstance. And this particular circumstance is that Mr. O'Neill Sloan is coming into court and with the effect of – The question is how does he come into court? Well, if the scope of the 3582 proceeding could be seen as to encompass a determination of eligibility for career offender status in the unusual circumstance where that eligibility has changed from career offender to not career offender, then he could proceed in the 3582 proceeding. Right. One can make that argument, and I think as an academic matter that could hold persuasive force. The problem is Mateo, right? I mean, hasn't that been asked and answered by Mateo? Why has it not been answered by Mateo? Well, again, because Mateo didn't address the situation where the defendant had originally been sentenced as a career offender, which was the case in Mateo. What distinguishes this is that Mr. O'Neill Sloan now files his petition in light of Begay where he is no longer a career offender. So why would he raise it? Well, I would look at it as an inchoate. Let's assume you're right on that. I mean, let's grant you that, that your client wouldn't be a career offender. But isn't your path to try to make some argument on habeas that it should apply retroactively? You should say, look, my guy is entitled to the writ of habeas corpus because in light of what we now know, he's not a career offender, and please apply that retroactively. Isn't that the argument? Yes, Your Honor. That's the second argument. Of course, he has already filed and been denied a 2255, so he can't file a second and successive. He's essentially in the same position as the defendant in Dorsonville was. I was going to ask you about Dorsonville. It's virtually the identical situation but with a twist. Did we do 2241 in Dorsonville? Yes, Your Honor. In the interest of justice? Yes. The idea being that, and Your Honor, in that opinion quoted from the Supreme Court's decision in Davis, which said that it would be a miscarriage of justice for someone to be punished for an act that is no longer criminal. And Your Honor extended that to the situation where you had a defendant who had filed a 2255, but because of the AEDPA, gatekeeping restrictions could not file a second and successive 2255, and therefore the court permitted him to proceed under 2241. I suggest that this is the same case with a slight extension. In Dorsonville, the defendant was relying on the Supreme Court's decision in Bailey, which made the crime no longer a crime. But looking at that a little bit more broadly, what it did was it said that he should not be punished for something that no longer makes him punishable. And that's exactly what's going on in this case. Mr. O'Neill Sloan is no longer a career offender. If he was being sentenced today, he would not be sentenced as a career offender. And because of that, that comes up in any retroactivity analysis, does it not? The laws change over time. Well, it does, but substantive change in the law, which affects criminality, is something that a defendant can attack laterally. And that's exactly what Dorsonville said. You still have to sidestep the fact that he was sentenced as a career offender. You have to sidestep that entirely and get right into the merits of his argument. What he's arguing is that he ought to have a shot to show he's not a career offender. Right. You have to sidestep the fact that he was sentenced as a career offender, and there's no jurisdiction, and get into the merits of your argument that he should not have been sentenced as a career offender. Well, originally, he should have been sentenced as a career offender. Before Begay? I'm sorry? Why do you say that, that originally he should have been sentenced? Well, pre-Begay. Yeah, before Begay. Yes. But either by expanding the scope of the 3582 proceeding to encompass this situation or through a 2241 proceeding, Mr. O'Neill Sloan should have the opportunity to argue that he is being punished for something for which he should no longer be punished. How do you expand 3582's jurisdictional limit? What would you say? What would we say that would allow us to look at your case or allow the district court to take a second look at your case? It's hard. Well, the language is very explicit. I just don't know how you can tweak it so as to accommodate your concerns. It's very hard. Well, if your Honor thinks that's not the direction that would be fruitful for us, then we're happy to go with the 2241 route. How do you get in the door with the 2241? Well, again, because 2241 is available for a defendant to collaterally attack a substance of legal change that makes a formerly criminal act non-criminal. There's a certain inequity here. I'm trying to figure out how it can be addressed. That's what we did in Dorsonville. Basically following Dorsonville, Your Honor. Do we have some general overall justice writ that when we see an injustice, we can find some way to cure it? I think that's what 2241 serves as, Your Honor. At least now that it has come down to that, 2241 provides that because it's not subject to the gatekeeping provisions of 2255. How could we limit it? I mean, would we open the gates too broadly if we used 2241? Give us a limiting principle. Suppose you're right or suppose we would like to go your way. Give us a way to limit it so that it doesn't open what Judge, I guess it was Judge Hardiman said, you know, everybody would raise this. How can you write it for us? Give us the sentence. Well, I didn't do an exhaustive search on Dorsonville, but my fairly quick search of Dorsonville turned up no cases that have since applied that exception. And I think that would be the situation here where it's a very narrow circumstance where someone comes into court where a substantive change in law has made an act no longer punishable for which he was earlier punished. It's just not, I think in practice it just has. I mean, 2241 is really habeas. Yes. What language in, I'm looking at 2241. Can we go back to the merits a moment? Sure. Is it your view that all simple assaults are not crimes of violence or is it your view that this simple assault involving your client was not a crime of violence? I think we have to take the position that because the Pennsylvania statute is written in the disjunctive. And because the sentence can be up to two years. Yes, that it could be found guilty as a result of either intentional acts or reckless acts. And so you have to go through the Taylor, Shepard. And the government would have to prove the relevant, would have to produce the diamond. If government's going to go into Pennsylvania history and stuff, good luck. Because it's very difficult in Pennsylvania. I just saw an article in a Pennsylvania newspaper that said how hard it is in Pennsylvania to know what they have done in some of these minor criminal cases. What happens if they draw a blank? Do we apply some sort of rule of lenity to give the defendant the benefit? I think it has to be that way, Your Honor. Do you look at the least restrictive provision of the simple assault statute? Yes. And I think there have been cases along those lines that where the recklessness is a possible mens rea, that's the mens rea that controls. So you would say that what it is, I'm trying to figure out, I mean, I'm looking at 2241 and all it says is writs of habeas corpus may be granted by any Supreme Court, et cetera. And you'd say that provision that gives us that broad provision and that meets all the other requirements of custody is enough? Yes. Yes, Your Honor. And it would be relying on the Supreme Court's decision in Davis and this Court's decision in Dorsonville. Okay. Well, we'll think about it.  Thank you, Your Honor. That's the only one. That's the only one. May it please the Court, my name is Darrell Bloom, an Assistant United States Attorney in Harrisburg, Pennsylvania, in the Middle District. We don't see you very much. It's nice to see you. It's good to see you as well, Your Honor. We see the EDPA people, but we don't see you. Your Honor, addressing first the argument that Mr. Harford posited regarding the resisting arrest, I would make a distinction. I think it needs to be made and it's very clear. One of the things that Judge Slover, you pointed out, was regarding some legislative history. And I think what's more impressive than that. What was that legislative history? I don't actually know that. But fortunately here, I don't think we need to look to that. And the reason being is because the statute itself says, with intent of preventing public service from an effect of arrest, they create a substantial risk of bodily injury. So we're not dealing with the minimal person that simply holds, stands there and doesn't allow a police officer. We're dealing with conduct that's much greater. And I think that's why. Is a clear conviction to resisting arrest always a clear conviction to a serious violent crime? Or do we have to apply the modified categorical approach and look underneath the incident of conviction? Well, I think you're honored to address that. I think it can be both ways. I think you can look to the statute itself and looking simply at the statute itself as a categorical approach, I think you can get there. I was asking which one should it be. You're suggesting either way? I believe that it's the government's position that it satisfies here under either a categorical approach or a modified categorical approach. Certainly with a modified categorical approach, you're looking at the statute itself. And certainly I would concede to the court that we can't really look to. More than the statutes, you're looking at the chart, what the judge said, and the plea colloquy, if there was any. Correct. Under the modified. Under the modified. You're really looking to other things to see which part of the statute they're referring to. And the government would certainly concede that we can't look to the underlying facts. There are some statutes that if you're convicted of, you don't have to look any further, right? Absolutely, without a question. In fact, the simple assault could be one if it didn't have the reckless part in there. I think that would be one that could be very clear. Well, it's not so sure. I don't necessarily accept that. There's nothing. Do you have any? I asked your colleague on the other side. Do you have any cases in Pennsylvania where they convicted, upheld the conviction of somebody, a lie-down protester? I am not aware of any such cases, Your Honor. Well, then, therefore, shouldn't we take the position that the Pennsylvania simple assault statute doesn't cover that and requires more? Well, I think the simple assault or the resisting arrest, Your Honor? Resisting arrest. The lie-down protester. The lie-down protester. No, even the simple assault, either one. Well, resisting arrest probably. Well, I think under the resisting arrest, I think what you have is you have, certainly in this case, I think you have something, a conduct, that is at least comparable to burglary. Burglary, you have in this particular statute. Now, Harford just walked away, as far as I can tell. I beg your pardon, Your Honor? What did Harford do? Isn't he the one who just walked away, all we can tell? Well, that may have. I mean, how do you charge somebody who just walks away with resisting arrest? Well, I don't know what all the facts are. Certainly that's what the pre-sentence report had. There was some indication. You people always rely on the pre-sentence report. There's some question whether we can look at it. But there's nothing else. I think you can't really look to the facts. I think you can't look to the facts. It's based upon the Supreme Court's decision in Shepard. Shepard you can look to, and I think the Court was somewhat clear in limiting the terms to the charging document, the terms of the plea agreement, the transcript of a colloquy, or other judicial records, such as a jury charge. I suppose you don't find them. It's your burden to show, the government's burden to show them, right? Well, I'm glad the Court pointed that out because I think there's two parts to that. At sentencing, I would agree it would be the government's burden to establish that by a preponderance of the evidence. In other words, to show that he is a career offender because he resisted arrest, it's the government's burden to show that there are two predicate offenses. Well, one of them was the resisting arrest. So you have to, clearly it seems to me it's the government's burden to show that. Isn't that right? Absolutely, Your Honor. I think that's absolutely appropriate. And to show that they qualify. In other words, you can't just say it's a simple assault anymore. That's correct. And I think that we would take then the government, the United States, would take a modified categorical approach and look to any documents we can obtain. And I think we would have to concede, and I think Judge Fuentes, you pointed out, if we can't establish that the conduct was intentional or purposeful, as Begay says, then I think the government would lose that particular argument. However, here, I think with the first addressing the resisting arrest, I think that it's certainly not an issue that's a felony. And I think that one of the things that's interesting is that the court and chambers talked about the highest of all five of the categories. And they did some analysis, specific analysis, about people that kind of walk away and the result of violence and those percentages that were applied. The very highest that's mentioned in there is individuals that actually go away from a law enforcement officer who's there. And that was actually 15.4% of injury. We have that issue in Hopkins. I don't know if the Hopkins. Yeah, Hopkins opinion came out, and there's a petition for rehearing. Correct. Yeah. And I think what's particularly interesting here is that I think we're roughly similar in kind to the examples in Begay, specifically the burglary. The degree of risk is comparable to that in Begay for a resisting arrest. Yeah, but take Mr. Harvard who just walked away. Well, Your Honor. As far as we know. And we can't assume that, Your Honor. And the reason we can't assume that is because the Supreme Court doesn't allow us to assume that. I would love, Your Honor, if the Supreme Court would say, the government, you can look at the facts to determine what part it was. Because then we get into a situation like Mr. Sloan where Mr. Sloan intentionally punched a woman and threw her down. But you can't look to that. You need to look to the statute. So, unfortunately, we have to push that aside. And I think that would only benefit the government. But I have to concede that we can't really look to the facts, Your Honor. Has anyone said that simple assault simply doesn't qualify for career offender status? Simple assault of any kind? Not that I'm aware of specifically to the Pennsylvania simple assault statute. It's an issue of first impression, really. So your view is you always have to look at the underlying information that's permitted by the gang. For the Pennsylvania statute, that's correct. Because it's divisible. I'm wondering because what constitutes simple assault in Pennsylvania is very similar to what is simple assault in New Jersey. And what is simple assault in Delaware? They're pretty much modeled one after the other. So they're very similar language, and yet the sentences are very different. So in New Jersey, it's six months. So if you're convicted of simple assault in New Jersey, that would not qualify for career offender status, but it would in Pennsylvania. And in Delaware, it's a sentence not to exceed a year. So I don't think that would qualify either. I don't believe it would, Your Honor. So only Pennsylvania convictions for simple assault would qualify for career offender status. What I'm thinking of is the sentencing disparity that we seem to be creating. Well, I think, Your Honor, that could be addressed by I think the – I would have to hope that the legislatures had considered that in taking into consideration the punishment and perhaps making their punishments only up to six months or only up to a year. That wouldn't qualify. Which is why it's – And now, do you concede that after Begay, our opinion in Dorsey is no longer in effect? I wouldn't completely do that. I think it whittles away – I think what it does is it whittles away Dorsey. And the reason I say that is because under the modified categorical approach, someone who's convicted in Pennsylvania of simple assault, if they have another predicate offense, certainly could be characterized as a career offender. And so I think it only whittles away in such that Dorsey really allowed recklessness to be included. And I think that part is kind of going down. Well, but Dorsey held that as a matter of law, simple assault under Pennsylvania qualifies as a crime of violence. And that can't be true anymore after Begay. Well, actually, Your Honor, I would respectfully disagree with the court. I mean, that was as a matter of law. I forget whose opinion it was. Well, you know, as a matter of fact, it was a non-Third Circuit judge who wrote it. It was Judge Godbold who wrote it. But on the panel was now Justice Alito. I would respectfully, Your Honor, and I think what they did was Dorsey said that it per se could serve as a predicate offense, a crime of violence. And it can't be. Your Honor, if the conduct is knowing or intentional. Well, but not as a matter of law. Not as per se. That's correct. Not absolute. To the extent that Dorsey said that as a matter of law, simple assault in Pennsylvania is a crime of violence, we can no longer think that that's the applicable. I would think it's easy for you to disagree. Keep on going. I just have one more. So I was looking at how you define a crime of violence. And, of course, Begay and the definition of 4B itself lists a series of crimes that constitute crimes of violence. And that list includes burglary of a dwelling, that's a residential burglary, arson extortion, the use of explosives, or otherwise involves conduct that presents serious potential risk of physical injury. It just seems to me, just maybe intuitively, that simple assault just doesn't fit in this category of very serious offenses or offenses that have the potential for serious harm. Well, I think, Your Honor, what the court did, and I think Begay addresses that, they talked about the similar in kind and comparable degree of risk of injury. And those are really the two big main factors. And I think for the Pennsylvania simple assault, it meets those elements. It certainly, other than setting apart the recklessness part of that, the knowing and intentional, certainly we have, A, purposeful conduct, and then we also have violent and aggressive conduct. You might be able to squeeze in, and I'm just wondering if it's really this type of offense. Now, Pennsylvania does have a tiered assault statutory framework, doesn't it? It does. It has an aggressive assault statute also. There's an aggravated assault. Aggravated assault. I mean, that I don't think there'd be any question about it qualifying. I'm just wondering about simple assault, which are the garden variety, you know, fights and pushing and shoving that you find, you know, in big cities. And they end up being pleased in the lower municipal courts. Those are the offenses that you could technically qualify for career. Well, I think, Your Honor, the other part of the Pennsylvania statute is that there's a cause of bodily injury to another. And I think that that part. Or, I mean, you could be intoxicated and throw a fist at somebody because you want to land a punch, but you don't. You miss. But if you're convicted, that qualifies. It would be the government's position that that would qualify, that the Pennsylvania stipulated, other than the reckless portion of that would certainly qualify. How do you keep setting aside the reckless portion? I don't understand how that helps you. Under Chambers, why? Well, I think, Your Honor, under both Taylor and Shepard, the Supreme Court decisions, they both indicated that you would take a modified categorical approach and look to these other documents to see if the conduct is knowingly or intentionally or recklessly. And I think that the recklessly the government concedes, the reckless wouldn't qualify as a crime of violence. I see. So you're saying that the statute, it depends on the circumstances, you're saying that in some cases a simple assault will be a predicate offense and in other cases it won't, and we look to the Shepard documents to determine what the mens rea was. Absolutely, and I think that's absolutely correct, and that would be the government's position in this regard. I know that somewhere I have seen, and they may be in my Stinson notes rather than in these notes, that Pennsylvania has said that these little fights that you have do not constitute simple assault. And you don't, I mean, it doesn't ring a bell with you at all? Well, I think Stinson actually, and Your Honor obviously is well aware, I think actually Stinson was addressing the resisting arrest as opposed to the simple assault portion. Well, yeah, I mean, and this discussion has gone from one to the other, which makes it a little difficult. But yes, Stinson, well, but if I remember correctly, and I have to go back to that, there were both involved in Stinson, and I think when we got to Stinson we thought that because of Dorsey we wouldn't get into the simple arrest and therefore had to go into the, I mean the simple assault, and therefore had to go into the resisting arrest because there was one obvious predicate. And I think the difference, and one of the things I think needs to be noted about the resisting arrest is, and one of the things that's important is that you have an officer who is present, you have the fact that the person is promptly detected leaving, and then you have beyond that you have immediate action or pursuit or resistance or some form. And I think that's why you also meet that. Don't you think, though, that they charge, I don't know whether it's district justices, I don't know who does it in Pennsylvania, that they charge resisting arrest when they come across a bunch of, say, abortion protesters and they don't want to get up and leave? Don't they charge resisting arrest? I mean I think they charge resisting arrest very broadly in the counties in Pennsylvania. I don't know whether or not that's true, but I think the difference. My guess is it's true. And it well may be, but I think looking at the statute itself we have conduct that is purposeful. And it's purposeful, and we know that because the statute talks about the intent of preventing a public servant from effecting an arrest. And then we have the next part, which is they create a substantial risk of bodily injury. And that part is going to be the distinction between someone who's an abortion activist or someone who's simply sitting and protesting and simply doesn't stand up when the police officer comes. And I think that's where the distinction is, and I think it's a very clear distinction that's in the statute. You're creating a substantial risk of bodily injury. So you're limiting yourself right now to resisting arrest. You're not talking simple assault. I'm trying to figure out which one you're talking about. Well, I can say this. I think the simple assault, if we're looking simply at the if we can establish that the conduct is knowing and intentional for the simple assault, I think it meets not only does it meet the residual clause, but I think you meet the first part. I think you meet both of those. I think you have conceded that in every simple assault case now, we've got to send it back because of the inclusion in the statutory language of recklessness. I mean, doesn't that have to be the government's position? No, Your Honor, and the reason... You mean that even though somebody is convicted of simple assault in Pennsylvania, that can be without having the Shepard and Taylor analysis, that can be a predicate crime? Well, I think, Your Honor, what... No, not necessarily. I think you need the analysis. But the reason I said my answer... No, wait a minute, wait a minute. Don't say you need the analysis and then go on. You need the analysis, but who does the analysis? We've got to send that back, right? Well, I think first, Your Honor, this court has an obligation to inquire as to its jurisdiction, and there has to be a vehicle to get there. Okay, that's a separate question. I was going to ask you about that. We talked to your friend on the other side. Can we finish with the merits of it? Yeah, sure. I just want... I agree with Judge Slover. We're not in the business of finding facts. Shouldn't the trial judge apply the... Look at the Shepard documents and do that first, and then we review it? Absolutely. If there's a vehicle to get back, then there's jurisdiction to do so. Absolutely. I would agree with the court that there would not be... This court shouldn't be determining facts. It should be remanded. If there is such a vehicle, then Mr. Krause would have such a vehicle. Right. I beg your pardon, Your Honor? Mr. Krause is looking for a vehicle. So if you lose... I think we... Let's see if we have an agreement. I know it's hard to get counsel to agree to anything. That's your job. But isn't it true that if you lose the jurisdictional issue in O'Neill Sloan, the case goes back? Absolutely. And I'm very agreeable, Your Honor. And let's hear why there was no jurisdiction for the district court in that case. Okay. Well, I think that, A, the district court was completely proper in what they did. They applied the law that they had to, which is Dorsey. And that decision then came up, and it came by way of a vehicle of a 3582C2. And certainly the court... And there's Matteo, and there's oodles of courts that have addressed that particular issue, as whether or not it constitutes a full resentencing of the defendant, or are you limited to specifically a two-level reduction based upon the sentencing commission's amendment to the crack cocaine or the guidelines there? Why shouldn't we apply habeas, which is a writ that allows the courts to do justice? And is it... Don't we have an obligation to find a vehicle so that, as in Dorsonville, if something was no longer a crime, don't we have an obligation to say, if we now know, since the Supreme Court told us in the case, that he may not be a career offender, we have to find a vehicle in which we can do what the habeas writ is for, which is to do justice? Well, I think that the distinction there is the fact that that was something that... It was an act that was no longer criminal. That's right. And there has to be a complete miscarriage of justice. Here, we're dealing with not an act that's no longer criminal. We're dealing with someone, a sentencing issue, and I think that you get into the retroactivity of that. But isn't it a complete miscarriage of justice for somebody to have to spend years in jail, extra years in jail, because he was denominated or categorized as a career offender when he is not in fact a career offender, under the law as Begay set it out? I think at the time, he was considered a career offender. Yeah, but the point is, that's why you use habeas. That's why you try to use habeas. Well, I think, Your Honor, you'd be circumventing all the requirements of the 2255, and I think that's one of the reasons, and I think that theoretically... Yeah, but we said in Begay, we said in Dorsonville, we can't use 2241 to get rid of 22, except in the case of a manifest injustice, I think we said. Why isn't this a case of manifest injustice? Well, I think because at the time, he was appropriately sentenced. He did not appeal. Well, he was appropriately sentenced in Dorsonville, too. And then we found out it wasn't a crime. Not being a crime, but I think that's the distinction. I think here we have someone... Here it's not being a career offender. Otherwise, this court would be opening up the doors to every defendant who has... No, we wouldn't. We would limit that. I mean, I can't tell you the number of cases, mostly they're in NPOs, in which people, you know, say Dorsonville, and we say, no, not Dorsonville, and we just get rid of them. I mean, we can limit it to manifest injustice. What I want to know is, why isn't this a case of manifest injustice? If he's right. Well, and I think the reason being is because he was appropriately sentenced at the time based upon Dorsey. That was the law at the time. Otherwise, every single case that could conceivably be retroactive would apply. I just told you, we limit that. You'd be surprised how many cases we just knock out right away. Well, okay, I guess we can't do more. I see my time is up. Do you have any more questions on that? Thank you, Your Honor. Yes, your time is up, but we gave you extra. Thank you. First, very briefly, I'd just like to address a point that Judge Sloviter had mentioned earlier about a somewhat lesser simple assault charge in Pennsylvania. It escaped, the precise statute escapes me at the moment, but it's something like mutual assault by scuffle where two people get into, that was actually involved in the United States versus Greer case, which Your Honors may recall from several years ago. Well, to my unhappiness. Yes, I may regret doing this, but I'd like to take another stab at why 3582 might provide a basis for Mr. O'Neill Sloan to get in the court. And that is the way for the court to do that is to take a broad view of the applicable guideline range language. 3582 lets the district court judge reduce a sentence where after an amendment, like Amendment 706, the defendant's applicable guideline range is lowered. In the ordinary career offender case, such as in the Mateo case, when the defendant was originally sentenced, he was a career offender, he files as 3582, he's still a career offender. He's therefore ineligible. This is a different situation. O'Neill Sloan was originally sentenced as a career offender. He files as 3582, but at least in a co-ed sense, because it hasn't been ruled on yet, but in a co-ed sense post-begay, his applicable guideline range is not the career offender guidelines. Maybe. Well... Is it that crystal clear? Maybe, and that should give, the district court ought to have the authority, if it really is maybe, ought to have the authority to investigate that further. But does 3582 let us do that? Does 3582 say that it goes back if the applicable guidelines range might be different? Well, it says... Let me read to you from U.S. v. Doe. One second. I'll let you do that, but before you do that, what does the statute say? I was going to say, read to us from the statute. I'm sorry, Your Honor, I just... I'm with you if the statute says that the district court might find that the guidelines range changed. My recollection is that that's not what the statute says. It says that guidelines... It's mandatory. This... I was going to read you one sentence that addresses that point. Go ahead. It's from United States v. Doe at 564 at... F3rd at 314. Wait, wait, wait, wait. 564, go ahead. F3rd at 314. What court? United States... This court, Your Honor. April 30th decision. And it was describing what the directive of 3582C is, and it says, the language of 3582C2 could not be clearer. The statute predicates authority to reduce a defendant's sentence on consistence with the policy statement, and the policy statement provides that a reduction is not consistent if the amendment does not have the effect of lowering the defendant's applicable guideline range. So, obviously, that's put in the negative, so if the amendment does have the effect of lowering the defendant's applicable guideline range, then the sentence can be reduced and the district court has authority to do that. What I'm suggesting here, Your Honor, is in this very unusual circumstance where someone's applicable guideline range has now changed as a result of an intervening Supreme Court decision on substantive law, that the district court ought to have the authority to deal with that. And that's the hook for 3582. Okay, thank you. Thank you, Your Honor. Thank you, gentlemen. It was well-argued. It leaves us with a problem, but we appreciate your assistance. Oh, you said yes? Wait a minute. Gentlemen, hold on for a minute. He said yes. How would you like to have this argument transcribed, and we'll put the obligation on the government, which has all of our tax money.